IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EVERLINA LAURICE HARP,          :     CIVIL ACTION
                                :     NO. 12-02401
          Plaintiff,            :
                                :
     v.                         :
                                :
LAURICE EL BAHDRY RAHME, et al., :
                                :
          Defendants.           :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      November 25, 2013


Table of Contents

I.  BACKGROUND and PROCEDURAL HISTORY ........................... 3

II. LEGAL STANDARD ............................................ 9
  A.  Summary Judgment Standard................................ 9
  B.  Scope of "Uncontested" Facts............................ 11

III.................................................. DISCUSSION
    13

  A.  Defendants' Motion for Summary Judgment.................. 13
    1.  Infringement of, or Unfair Competition with, Plaintiff's
    trademarks  "Everlina & Laurice" or "Laurice" (Counts 1-2, 4)
    13
      a.  The Evidence of Record as to each Lapp Factor ........ 17
      i.  Similarity between Plaintiff's and Defendants' marks
      (Lapp Factor 1) ...................................... 17
      ii. Strength of Plaintiff's "Everlina & Laurice" and
      "Laurice" marks (Lapp Factor 2) ...................... 21
      iii. Price and other factors indicating care and attention
      of consumers in purchasing the parties' products (Lapp
      Factor 3) ............................................ 27
      iv. Length of time Defendants have used "Laurice & Co."
      without evidence of actual confusion by consumers (Lapp
      Factor 4) ............................................ 28

v. Intent of Defendants in adopting the "Laurice & Co." mark (Lapp Factor 5) .................................. 29

vi. Evidence of actual confusion by consumers (Lapp Factor 6) 31

vii. ...... Channels of trade and advertising media used by Plaintiff and Defendants (Lapp Factor 7) ............... 33

viii. ... Plaintiff's and Defendants' Target Consumers (Lapp Factor 8) ............................................ 34

ix. Relationship of Plaintiff's and Defendants' products in the minds of consumers (Lapp Factor 9) .............. 35

x. Evidence of converging markets (Lapp Factor 10)..... 37

b. Balancing the Ten Lapp Factors ....................... 37

2. Counterfeiting Plaintiff's trademarks (Count 3) ........ 38

3. Dilution of Plaintiff's trademarks (Count 5) ........... 40

4. Intentional Interference with Plaintiff's Actual and Prospective Business Relations (Count 6) .................. 43

5. Civil Conspiracy (Count 7) ............................ 45

B. Plaintiff's Cross Motion for Summary Judgment........... 46

IV. CONCLUSION ............................................. 48

Currently pending in this case is a motion for summary judgment filed by Defendants Laurice El Badry Rahme ("Rahme"), Laurice El Badry Rahme, Ltd. ("Rahme Ltd."), and Saks Fifth Avenue Enterprises ("Saks") (collectively, "Defendants"), and a "Counterclaim," which the Court construes as a cross motion for summary judgment, filed by Plaintiff Everlina Laurice Harp ("Plaintiff"). The factual record is sparse in this case but the material facts are uncontested. Plaintiff's allegations do not form a basis for any of the legal claims she asserts. Accordingly, the Court will grant Defendants' motion for summary judgment as to all counts and will deny Plaintiff's motion for summary judgment as to all counts.

## I.   BACKGROUND and PROCEDURAL HISTORY

Since 1994, Plaintiff[1] has been in the business of developing, marketing, distributing, selling, and promoting jewelry-cleaning services, polishing products, perfume products, soaps, and lotions. See Am. Compl. ¶ 10, ECF 36. Plaintiff applied for a trademark to establish her brand identity in April 1994. Id. ¶ 12. The United States Patent and Trademark Office registered her trademark, "Everlina Laurice," on January 1, 1997. Id.[2] Since this time, Plaintiff has traded under the names "Everlina Laurice," "Everlina," and "Laurice." Id. ¶ 13.

On February 12, 2004, Defendant Rahme Ltd. filed a petition to cancel the registration of trademark "Everlina Laurice." See Pl.'s Resp. Mot. Dismiss 11, Aug. 14, 2012, ECF No. 49. Rahme Ltd. also sought to register the mark "Laurice" for perfumes, colognes, and room fragrances but its application was denied. See Defs.' Reply, Ex. A, 1-3, ECF No. 88-2.[3] Rahme Ltd. then

---

[1] As Plaintiff is proceeding pro se the Court will liberally construe her pleadings under the applicable law. Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002).

[2] It should be noted that there is a discrepancy in dates. Plaintiff states that her trademark was registered on January 9, 1997, but the exhibit attached to her complaint suggests that she filed her registration on January 9, 1997 but that registration was not complete until May 26, 1998. See Pl.'s Amend. Compl., Ex. A, Registration of Pl.'s "Everlina Laurice" trademark. For the purposes of evaluating Defendants' motion for summary judgment, the Court will construe all dates in the light most favorable to Plaintiff, and therefore will proceed under the assumption that Plaintiff's trademark was registered on January 9, 1997. In any case, the exact date that Plaintiff's "Everlina Laurice" mark was registered is not material to the disposition of this case.

[3] It is unclear from Plaintiff's complaint and the exhibits that Plaintiff has filed on what date this occurred.

withdrew its petition to cancel. See Am. Compl., Ex. C, Def. Rahme's Withdrawal of Petition to Cancel Pl.'s trademark.

In a letter dated April 5, 2012, Plaintiff contacted Saks regarding the sale of perfumes with the "Laurice & Co." mark in Saks's department stores. Id., Exs. B1-B2. Plaintiff stated that Defendant Saks's use of the "LAURICE" mark in connection with the sale of Defendant Rahme Ltd.'s Bond No. 9 perfume line constituted trademark infringement, as such use was likely to cause confusion with Plaintiff's registered "EVERLINA LAURICE" and common law "LAURICE™" marks. Id., Ex. B1. Saks did not respond to Plaintiff's letter and did not cease sales and marketing of the alleged infringing product. Id. ¶ 16. In an apparent further attempt to protect her original mark, Plaintiff obtained an additional registered trademark for the name "LAURICE" on June 12, 2012. Id., Ex. D.

Plaintiff now brings this action for trademark infringement and related claims against Defendants, seeking both monetary damages and injunctive relief. Plaintiff filed an amended complaint on July 9, 2012 (ECF No. 36), asserting the following seven counts against all Defendants:

(1)   Violation of the Lanham Act through Defendants' use of the names "Everlina," "Laurice," and "Everlina & Laurice" in connection with the sale of Bond No. 9 perfume;

(2)   Violation of the Lanham Act through Defendants' use of the name "Laurice" in connection with a business not affiliated with Plaintiff;

(3)   Violation of the Trademark Counterfeiting Statute;

(4)   Common Law Unfair Competition;

(5)   Violation of the Federal Trademark Dilution Act;

(6)   Intentional Interference with Actual and Prospective Business Relations; and

(7)   Civil Conspiracy.

Between July and November of 2012 Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for a more definite statement. See Def. Saks's Mot. Dismiss, ECF No. 40; Def. Rahme's Mot. Dismiss, ECF No. 69. Plaintiff filed several responses to these motions. See Pl.'s Resp. Mot. Dismiss, Aug. 14, 2012; Pl.'s Resp. Mot. Dismiss, Nov. 15, 2012, ECF No. 71. A hearing was held on December 3, 2012 to consider the Defendants' pending motions. At the hearing the Court determined that the case turns in large part on whether Plaintiff actually alleges facts constituting trademark infringement and if so what products that infringement attaches to. The Court therefore concluded that a fuller factual record was warranted. See Hr'g Tr., 25:12-25:15, Dec. 3, 2012, ECF No. 81. Defendants' motions to dismiss were denied and the

Court issued a new scheduling timeline, directing Defendants to file any motion for summary judgment within 30 days.

Pursuant to the Court's order, Defendants filed a motion for summary judgment on January 2, 2013 alleging that the material facts related to this case are not in dispute and as a matter of law each of Plaintiff's claims fail. Central to this motion is Defendants' contention that "Laurice & Co." has only been used as a business or trade name and never as a trademark. See Defs.' Mot. Summ. J., ECF No. 83.

Also on January 2, 2013, Defendant Rahme submitted to the Court a declaration with numerous attached exhibits representing her use of "Laurice & Co." as a trade name in conjunction with the sales of her line of over 60 perfumes. See Decl. Laurice El Badry Rahme, ECF No. 84. Rahme's attachments include a certificate of incorporation of "Laurice El Badry Rahme Ltd.," issued in 1989, and a certificate of assumed name of "Laurice & Co.," dated May 30, 1995. See Decl. Laurice El Badry Rahme, Exs. B and C, ECF No. 84-1. The attachments also illustrate "Laurice & Co." stickers that the parties referred to at the December 3, 2012 hearing. It appears that either a sticker or printed label located on the bottom or back of each of Defendants' products features: in large cursive type, "Bond No. 9," and underneath, in smaller print, "NEW YORK," the name of the specific perfume, such as "PARK AVENUE," or "CHINATOWN," and finally, "LAURICE & CO. LTD,

6

New York, NY, 10012." See generally Decl. of Laurice El Badry
Rahme, Exs. F – YY (images of Defs.' product labels), ECF No.
84-2 —84-7.

Plaintiff's response,[4] filed on January 30, 2013, reiterates
the conclusory statements that Defendants' use of "Laurice &
Co." amounts to trademark infringement and unfair competition,
that Defendants' ownership of the domain name
"www.lauriceco.com" diverts Plaintiff's customers,[5] and that the
United States Patent and Trademark Office's denial of Defendant
Rahme Ltd.'s application to trademark "Laurice & Co." because of
likely confusion with Plaintiff's "Everlina & Laurice" mark
provides evidence of likelihood of confusion. See Pl.'s Resp.
Mot. Summ. J., Jan. 30, 2013, ECF No. 86.

Plaintiff also filed a short document on January 30, 2013,
labeled "Counterclaim" which the Court construes as a cross
motion for summary judgment. See Pl.'s Counterclaim, ECF No. 87.
This submission largely duplicates Plaintiff's assertions in her
response to Defendants' Rule 56 motion. Specifically, Plaintiff

---

[4] Plaintiff did not argue that she needed discovery in order to reply to
the motion for summary judgment. See Fed. R. Civ. P. 56(d). In fact, she
filed a counterclaim, which the Court construes as a cross motion for summary
judgment, based on the facts of record. See Pl.'s Counterclaim, ECF No. 87.

[5] Plaintiff appears to be suggesting in her response an alternative
infringement theory by claiming that Defendants' use of the domain name
"www.lauriceco.com" constitutes an infringement with Plaintiff's trademark of
"Laurice." Pl.'s Resp. Mot. Summ. J., Ex. W, ECF No. 86-6. Plaintiff does not
put forth any evidence or suggest that Defendant is using this domain name to
market perfume. However, Plaintiff has provided a print out from
"register.com" that suggests that the domain name is owned by Defendant
Laurice & Co., and that this ownership impedes Plaintiff's use of the
"Laurice" mark. See id., Ex. W3, ECF No. 86-6.

again argues that "Laurice" is an "extremely strong mark on the Trademark registry," that Defendants' ownership of the "www.lauriceco.com" domain name infringes with Plaintiff's trademark rights, that a comparison the parties' marks shows a likelihood for confusion, and that Defendants are intentionally and maliciously trying to harm Plaintiff. Id.

Defendants filed a memorandum in reply to Plaintiff's response and a counterclaim to Defendants' Rule 56 motion (ECF Nos. 86, 87) arguing that Plaintiff's submissions are "improper in form and substance and should be given no consideration." Defs.' Reply, 3, ECF No. 88. Defendants argue that Plaintiff does not refute any of Defendants' statements of fact. Id. at 2. Furthermore, Defendants argue that because Plaintiff's submissions fail to address any of Defendants' assertions of fact, these facts should be considered undisputed. Id. at 3 (citing Fed. R. Civ. Pro. 56(e); Fabral, Inc. v. B & B Roofing Co., Inc., 773 F. Supp. 2d 539, 542-43 n. 4 (E.D. Pa. 2011)). Additionally, Defendants characterize Plaintiff's submissions in opposition as merely "repeat[ing] her prior bare assertions and conclusory allegations." Defs.' Reply 3, 4. In their reply Defendants also include exhibits that document the 2004 application by Defendants of a trademark for the "Laurice & Co." mark. See generally Defs.' Reply, Exs. A – D, ECF Nos. 88-2 – 88-5.

## II.   LEGAL STANDARD

A.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving

party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Although the moving party bears the burden of demonstrating the absence of a genuine issue of material fact, in a case such as this, where the nonmoving party is the plaintiff and bears the burden of proof at trial, the nonmoving party must present affirmative evidence sufficient to establish the existence of each element of his case. Id. at 306 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where a plaintiff fails to point to "sufficient cognizable evidence to create a material issue of fact 'such that a reasonable jury could find in its favor,'" then summary judgment may be awarded to a moving defendant. See Perez v. New Jersey Transit Corp., 341 Fed. App'x 757, 760 (3d Cir. 2009) (not precedential) (citing McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007)); see also Zilich v. Lucht, 981 F.2d 694, 696 (3d Cir. 1992) (stating that, to avoid an unfavorable summary judgment, a pro se plaintiff bears the burden of producing evidence "such that a reasonable jury could return a verdict [in his favor]") (citations omitted). The nonmoving party may survive a motion for summary judgment by presenting direct or circumstantial evidence and that evidence "need not be as great as a preponderance," though it must be "more than a scintilla." McCabe, 494 F.3d at 424

(citing <u>Hugh v. Butler County Family YMCA</u>, 418 F.3d 265, 267 (3d Cir. 2005)).

   B.   Scope of "Uncontested" Facts

      In their legal memorandum and reply in support of motion for summary judgment, Defendants ask the Court to regard the material facts set forth in their motion as uncontested in spite of Plaintiff's response and "counterclaim." <u>See</u> Defs.'  Reply. In support of this request, Defendants cite a "generally accepted proposition that all facts not specifically denied by the nonmoving party are deemed admitted." Defs.' Reply, 3, ECF No. 88. Because Plaintiff's responses "are improper in form and substance," Defendants argue, those submissions should be given no consideration. <u>Id.</u>

      Defendants correctly note that though courts are to view facts and inferences in the light most favorable to the nonmoving party, a nonmoving plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment. Rather, a plaintiff "must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." <u>Jones v. United Parcel Serv.</u>, 214 F.3d 402, 407 (3d Cir. 2000); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324 ("[N]onmoving party [must] go beyond the pleadings and . . . designate 'specific facts showing that

11

there is a genuine issue for trial.'" (citing Fed. R. Civ. Pro. 56(e)); <u>Kirleis v. Dickie, McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 161 (3d Cir. 2009) ("Conclusory, self-serving [statements] are insufficient to withstand a motion for summary judgment. Instead, the [party] must set forth specific facts that reveal a genuine issue of material fact." (citations omitted)).

Consequently, the Court will not recognize disputes of material fact based solely on conclusory statements that are not substantiated by specific allegations of fact or evidence on the record. Plaintiff's pro se status does not eliminate her obligation to allege specific facts, substantiated by evidence on the record. <u>See</u> <u>Benckini v. Hawk</u>, 654 F. Supp. 2d 310, 316 n. 1 (E.D. Pa. 2009) (While they are held to "less stringent standards," pro se litigants are nevertheless "not permitted to totally ignore all rules and standards." (quotations omitted)). However, to deny any consideration to Plaintiff's submissions due to deficiencies in formatting would conflict with the policy of construing liberally the submissions of pro se parties. Therefore, the Court finds that inadequacies in the form of Plaintiff's responses to the pending motion for summary judgment will not preclude the Court from considering these submissions, as well as the record as a whole.

**III.   DISCUSSION**

   A. Defendants' Motion for Summary Judgment

   Defendants argue that no disputes of material fact exist in the instant case and that Defendants are entitled to summary judgment on each of Plaintiffs' claims as a matter of law.

   The Court considers Plaintiff's trademark infringement and unfair competition claims (Counts 1-2, 4) together, as all three turn on a common question of "likelihood of confusion." The Court will then consider individually each of Plaintiff's remaining claims.

   1. Infringement of, or Unfair Competition with, Plaintiff's trademarks  "Everlina & Laurice" or "Laurice" (Counts 1-2, 4)

   Plaintiff asserts that Defendants' use of the "Laurice & Co." mark infringes upon Plaintiff's registered trademarks, "Everlina & Laurice" (Count 1) and "Laurice" (Count 2), in violation of the Lanham Act, and further that Defendants' use of the infringing mark constitutes unfair competition in violation of Pennsylvania law (Count 4). Amend. Compl. ¶¶ 23-24, 29, 39.

   The Lanham Act ("Act"), 15 U.S.C. §§ 1051, is the controlling federal statute for trademark infringement and unfair competition claims. "The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.'" Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S.

763, 767-68 (1992) (quoting 15 U.S.C. § 1127). To prove either form of Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 Fed. 3d 198, 210 (3d Cir. 2000). The requirements of a Pennsylvania unfair competition claim mirror those of a Lanham Act claim, but without the additional federal requirement of interstate commerce. See R.J. Ants., Inc. v. Marinelli Enterprises, LLC, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011).

The Court finds that there is no dispute that Plaintiff owns valid and legally protected trademarks for "Everlina & Laurice" and "Laurice," fulfilling the first two prongs of the infringement and unfair competition tests. See Pl.'s Amend. Compl., Ex. A, Registration of Pl.'s "Everlina Laurice" trademark, ECF No. 36; id., Ex. D, Registration of Pl.'s "Laurice" trademark. Therefore, the Court must proceed to examine whether Plaintiff has pointed to sufficient evidence of record of a likelihood of confusion of the parties' products from which a reasonable jury could find for Plaintiff on the infringement and unfair competition analysis.[6]

---

[6] Defendants assert that they are entitled to summary judgment pursuant to Rule 56 because the undisputed factual record shows that "Laurice & Co." has only been utilized as a trade or business name, not a trademark, and thus

"To prove likelihood of confusion, plaintiffs must show that 'consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 280 (3d Cir. 2001) (quoting Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1229 (3d Cir. 1978)). The Third Circuit has recognized a non-exhaustive list of ten factors, sometimes referred to as the "Lapp factors," after the foundational case Interpace Corp. v. Lapp Inc., 721 F.2d 460 (3d Cir. 1983), that may be considered when determining whether a likelihood of confusion exists. The Lapp factors are:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

---

negates the likelihood of confusion element required in Plaintiff's various trademark infringement and unfair competition claims. See Defs.' Mem. in Support of Mot. Summ. J., 6-8, ECF No. 83-1. The court agrees that the use of "Laurice & Co." as a trade name rather than a trademark is a relevant consideration when evaluating likelihood of confusion, but rejects the suggestion that such a distinction is dispositive. While the use of Laurice & Co. in the context of a trade name may suggest that consumer confusion between the parties' products is less likely, the inquiry does not end there.

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods . . . are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity of function; [and]

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

A & H Sportswear, 237 F.3d at 211 (citing Lapp, 721 F.2d at 463); see also Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 469 (3d Cir. 2005).

"None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against the other." Checkpoint Sys., 269 F.3d at 280. The Third Circuit has indicated that when balancing of the ten Lapp factors, a fact-finder "determine[s] whether in the totality of the circumstances marketplace confusion is likely." Checkpoint Sys., 269 F.3d at 297 (citing A & H Sportswear, 237 F.3d at 215; Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,

16

30 F.3d 466, 476 n. 11 (3d Cir. 1994)).

The Court will proceed to examine each Lapp factor seriatim.[7]

    a. The Evidence of Record as to each Lapp Factor

       i. Similarity between Plaintiff's and Defendants' marks
         (Lapp Factor 1)

The Third Circuit has recognized that "[t]he single most important factor in determining likelihood of confusion is mark similarity." A & H Sportswear, 237 F.3d at 216 (citing Fisons, 30 F.3d at 476). "'[U]nless the allegedly infringing mark . . . is substantially similar to the protectable mark . . . , it is highly unlikely that consumers will confuse the product sources represented by different marks." Checkpoint Sys., 269 F.3d at 281 (citing Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd., 50 F.3d 189, 202 (3d Cir. 1995)).

"Marks 'are confusingly similar if ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship.'" A & H Sportswear, 237 F.3d at 216 (quoting Fisons, 30 F.3d at 476)). In determining

---

[7] The Court notes two different approaches to applying the Lapp factors in the context of deciding a motion for summary judgment. In Kinbook, LLC v. Microsoft Corp., 866 F. Supp. 2d 453 (E.D. Pa. 2012), the court went factor by factor, evaluating whether evidence on the record allowed a reasonable jury to weigh each factor for or against a finding of likelihood of confusion. By contrast, in Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc., 333 F. Supp. 2d 239 (D. Del. 2004), the court applied each Lapp factor separately before determining whether, on balance, there was sufficient evidence from which a reasonable jury could find a likelihood of confusion. The Court finds that the approach taken in Chase Manhattan Bank provides a clearer path in this case. In any event, under either approach, the result in this case would be the same.

whether marks are similar, a court can consider whether the marks "'create the same overall impression when viewed separately.'" Id. (quoting Fisons, 30 F.3d at 476).[8] In assessing the degree of similarity between two marks, a court should "compare the appearance, sound and meaning of the marks . . . to determine whether the average consumer, on encountering one mark in [the] isolated circumstances of [the] marketplace and having only [a] general recollection of the other, would likely confuse or associate the two." Checkpoint Sys., 269 F.3d at 281 (citations omitted).

In considering similarity of appearance between parties' marks, courts have looked to the visual characteristics such as the layout and format of lettering. See, e.g., A & H Sportswear, 237 F.3d at 217 (affirming two marks as visually distinct based on differing fonts and cases used in the lettering of each); R.J. Ants, 771 F. Supp. 2d at 490 (finding two marks visually distinct because of the respective arrangement of words, the inclusion of quotation marks in one mark and not the other, the other words included in one mark and not the other, and the different illustrations included in the two marks).

In the instant case, the record compels that Defendants' use of the mark "Laurice & Co." is dissimilar from Plaintiff's

---

[8] In fact, where the two products in question are generally not sold side-by-side, a court should endeavor to "move into the mind of the roving consumer." A & H Sportswear, 237 F.3d at 216 (citing Ciba-Geigy Corp. v. Bolar Pharm. Co. Inc., 747 F.2d 844, 851 (3d Cir. 1984)).

use of the "Everlina & Laurice" and "Laurice" marks.[9] First, the
visual appearance of Defendants' mark is distinct, as it appears
in a small typeface, located on the back or bottom of
Defendants' products. See Am. Compl., Ex. I2 (showing
Defendants' product packaging bearing "LAURICE & CO." label);
see generally, Decl. of Laurice El Badry Rahme Exs. F – YY
(showing Defendants' product packaging bearing "LAURICE & CO."
label).  By contrast, Plaintiff's trademarks appear prominently
on Plaintiff's products and generally are featured in large, at
times cursive, type. See Am. Compl., Exs. I1, I2 (showing vials
of Plaintiff's perfumes prominently bearing the "EVERLINA" and
"LAURICE" marks in black, all capital type); Pl.'s Resp. Mot.
Dismiss 7-8, Nov. 15, 2012 (showing Plaintiff's "Everlina
Laurice" mark in cursive type).

     In considering the "sound" of the marks at issue, courts
have looked at the number of words and syllables, as well as the

---

[9] Plaintiff points the United States Patent and Trademark Office's
reasoning in denying Defendant Rahme's application to register "Laurice" as a
trademark, that it was too similar and thus likely to be confused with
Plaintiff's "Everlina & Laurice" mark in the sale of perfumes and beauty
products. Pl.'s Resp. Mot. Summ. J., Ex. I10, U.S. Patent and Trademark
Office Action, ECF No. 86-2.
     The Court finds the outcome of Rahme's trademark application relevant
but not dispositive to the question of likelihood of confusion or the sub-
question of similarity between Plaintiff's and Defendants' marks. The
Trademark Office determined that if Defendant began using "Laurice & Co." as
a trademark it would create a likelihood of confusion with Plaintiff's marks.
However, he Trademark Office did not consider whether Defendants are
currently using "Laurice & Co." as a trademark or whether their use of the
mark creates a likelihood of confusion with Plaintiff's trademarks.
Furthermore, there is no evidence that the United States Patent and Trademark
Office uses the same standard in evaluating likelihood of confusion as is
required in the context of an infringement suit in federal court.

use of different words or syllables, in each mark. See, e.g., A
& H Sportswear, 237 F.3d at 217 (affirming two marks were
distinct in sound based on the fact that the two marks had
different numbers of syllables and that the last syllable of
each mark was different); R.J. Ants, 771 F. Supp. 2d at 490
(finding that two marks created different auditory impressions
because one mark included eight syllables ending with the word
"Philadelphia" and the other mark included fourteen syllables
ending with the word "Bakery").

Plaintiff's and Defendants' marks possess different sounds,
as Defendants' mark includes the additional words "and Company"
not included in Plaintiff's "Everlina Laurice" and "Laurice"
marks. Also, Plaintiff's marks possess six or two syllables and
end with the word "Laurice," while Defendants' mark possesses
seven syllables and ends with the word "Company." Accordingly,
just as the Third Circuit found two marks to be distinct in A &
H Sportswear, based on a different number of syllables and
ending sounds in each, the undisputed record in this case
indicates that Plaintiff's and Defendants' marks are
distinguishable. See 237 F.3d at 217.

In considering the meaning of parties' marks, courts have
looked to whether the words included in each mark, viewed as a
whole, gave the mark a different denotative or connotative
meaning. See, e.g., A & H Sportswear, 237 F.3d at 217; R.J.

20

Ants, 771 F. Supp. 2d at 491. In the instant case, the connotative meaning of Defendants' mark appears to comply with an industry standard indicating the source or manufacturer of the product. See Hr'g Tr., 4:15-25, Dec. 3, 2012. Plaintiff's marks seem to carry the meaning of a brand line, indicating that Plaintiff's various products come from the same brand or source. See, e.g., Pl.'s Resp. Mot. Dismiss, Ex. C, Nov. 15, 2012 (showing Pl.'s products for sale in a retail setting under the "Everlina Laurice" line). In addition, Plaintiff's "Laurice" mark appears to be used as the name of a particular perfume product. See Pl.'s Amend. Compl., Ex. I1 (showing a vial of Pl.'s "Laurice" perfume product), ECF No. 36.

Even construing the undisputed factual record in the light most favorable to Plaintiff, dissimilarities in appearance, sound, and meaning between the parties' marks cause this factor to weigh against a finding of likelihood of confusion.

> ii.  Strength of Plaintiff's "Everlina & Laurice" and "Laurice" marks (Lapp Factor 2)

The second factor that may be considered in determining likelihood of consumer confusion is the strength of the plaintiff's mark. Plaintiff asserts that her trademark "'Laurice' is an extremely strong mark" because only two registrations with the wording "Laurice" appear in the U.S. Trademark registry. See Pl.'s Resp. Mot. Summ. J., Ex. S3, ECF

21

No. 86-5. However, even assuming that Plaintiff's factual
assertions are true, the lack of other trademarks using the term
"Laurice" is not dispositive of the question of the strength of
Plaintiff's marks. The Third Circuit defines a "strong"
trademark as:

> [O]ne that carries widespread, immediate recognition that
> one producer (even if unknown) is associated with the mark,
> and so with the producer . . . [such that] [i]f a second
> comer adopts a mark substantially identical to [the] strong
> mark, there is a correspondingly high likelihood that
> consumers will mistakenly associate the newcomer's product
> with the owner of the strong mark.

Checkpoint Sys., 269 F.3d at 282 (quoting Versa Prods., 50 F.3d
at 204). In determining the strength of a mark, the Third
Circuit has repeatedly applied a two-prong test of "(1) the
distinctiveness or conceptual strength of the mark; and (2) the
commercial strength or marketplace recognition of the mark." A &
H Sportswear, 237 F.3d at 221 (quotations omitted); see also
Fisons, 30 F.3d at 478-79.[10]

---

[10] The Court notes that the analysis and relevance of the strength of
Plaintiff's mark would be different if Plaintiff were raising a "reverse
confusion" claim, which occurs where a smaller, more senior, mark owner
claims that a more widely publicized junior mark is flooding the market and
therefore will confuse consumers and cause them to misattribute the senior,
smaller mark holder's products as coming from the larger, junior mark holder.
See A & H Sportswear, 237 F.3d at 229, 230. Though Plaintiff in the instant
case appears to be the smaller and senior mark holder, her complaint is
clearly framed in terms of direct confusion, as she is concerned that
Defendants are unfairly profiting from customers who believe that products

Prong 1: Distinctiveness or Conceptual Strength

In evaluating distinctiveness or conceptual strength of a mark, a court should place the mark in one of four classifications: "generic," "descriptive," "suggestive," and "arbitrary or fanciful." A & H Sportswear, 237 F.3d at 221-22 (citing Two Pesos, 505 U.S. at 768). However, this classification is not dispositive; a court may also look at other factors relevant to strength, such as the extent to which part of the mark is used by other entities within the market or whether the mark is used in connection with several different products. Id. at 222. Additionally, a court may consider whether the mark has acquired a secondary meaning, such that the mark has become synonymous with a plaintiff's product in the mind of consumers.

Generally, personal names fall in the descriptive category and are not considered inherently distinctive or strong trademarks, making evidence that such marks has acquired secondary meaning particularly relevant. See Brown & Brown, Inc.

---

bearing the "Laurice & Co." mark are actually coming from Plaintiff's company, Everlina Laurice. See Amend. Compl. ¶¶ 24-26, 29-30 ("The Defendants' use of the name LAURICE in connection with a business not affiliated with the Plaintiff misrepresents the services offered by the Defendants by implying that such services are the same as those offered by the Plaintiff."); Hr'g Tr., 13:15-21, Dec. 3, 2012, ("Each of [Defendant Rahme's] 68 different [products] has Laurice, which are[sic] supposed to identify [Plaintiff], not [Defendant Rahme]. . . . It is a commercial impression and [Defendant Rahme] will be recognized as [Plaintiff] if that continues.").  The distinction between reverse and direct confusion claims is particularly relevant for the "strength of mark" Lapp factor, because under a reverse confusion claim, the relative weakness of a plaintiff's mark would actually weigh in that plaintiff's favor. See A & H Sportswear, 237 F.3d at 230-31.

v. Cola, 745 F. Supp. 2d 588, 611 (E.D. Pa. 2010). In measuring when a personal name has acquired secondary meaning, a court should look to whether "the name and the business it is associated with [have] become synonymous in the public mind" and whether "the secondary meaning submerges the primary meaning of the name as a word identifying a person, in favor of its meaning as a word identifying that business." Id. (citing AFL Philadelphia LLC v. Krause, 639 F. Supp. 2d 512, 526 (E.D. Pa. 2009)). In making this showing, the plaintiff mark holder "must not only show that [the personal name] [is] used . . . as a trademark, but that a substantial portion of the consuming public associates the name specifically with its business." Id. (citations omitted); see also AFL Philadelphia, 239 F. Supp. 2d at 526; Tillery v. Leonard & Sciolla, LLP, 437 F. Supp. 2d 312, 321-22 (E.D. Pa. 2006). But see Scarves by Vera, Inc. v. Todo Imports Ltd., 544 F.2d 1167, 1173 (2d Cir. 1976) (finding that a personal name, "Vera," constituted a strong mark, where the owner's "sales figures," "advertising expenditures," and "many articles written about [the owner]" "established that [owner's] trademark was highly successful and widely recognized in the medium-high fashion industry.").

In the present case it is uncontested that Plaintiff's two marks ("Everlina Laurice" and "Laurice") and the relevant portion of Defendants' mark ("Laurice") are personal names, the

names of the Plaintiff and Defendant Rahme. <u>See</u> Hr'g Tr., 2:18-4:1, May 1, 2012, ECF No. 8; Hr'g Tr., 17:22-35, May 18, 2012, ECF No. 20; Decl. of Laurice El Badry Rahme, Ex. A (Defendant Rahme's scanned U.S. passport), ECF No. 84-1.

Plaintiff asserts in her complaint that her marks have come to be associated by her customers with her product line such that the marks carry an inherent second meaning of association with her products. <u>See</u> Pl.'s Resp. Mot. Summ. J. 3, ("[P]laintiff is in the habit of labeling her [products] with distinctive mark [sic] so that purchasers recognize goods thus marked as being of Plaintiff[sic] production."). However, no evidence has been submitted on the record to prove the existence of this association. In addition, the uncontested material facts of this case show that Plaintiff's marks containing her personal name are applied on a wide range of different kinds of products. <u>See</u> <u>id.</u> (stating that Plaintiff uses her marks on products including "shower gels," "[l]otion," "perfume," "[b]ody wash," and "[f]ragrence [o]ils"); Hr'g Tr., 10:19-22, Dec. 3, 2012.  As a result, even considering the facts in the light most favorable to the Plaintiff, it is clear that the personal names in Plaintiff's marks have not led to a "substantial portion of the consuming population" to associate these names specifically with Plaintiff. <u>Brown & Brown</u>, 745 F. Supp. 2d at 611. Although

Plaintiff's trademarks may be legally protected, she has failed to provide any evidence that her marks are inherently strong.

Prong 2: Commercial Strength

When applying the second prong of the Fisons test, courts determine the commercial strength of a plaintiff's mark by considering factual evidence regarding recognition of that mark in the marketplace, such as "money expended on advertising, trends in purchasing, or other indicators of recognition by consumers." Strike Holdings LLC v. UC Strikes, LLC, 2005 WL 1799412, at *6 (E.D. Pa., July 28, 2005) (citing A & H Sportswear, 237 F.3d at 224); see also Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 213 F.3d 432, 440 (3d Cir. 2000). In the instant case, Plaintiff has made no assertions about the type or scale of advertising used to further recognition of her trademarks.[11] The uncontested facts on this matter are limited, showing only that Plaintiff is a small business owner with a website. Even considering these facts in the most favorable light, Plaintiff has failed to provide any evidence showing strong commercial association of her trademarks and her business.

---

[11] Plaintiff asserts that she is a "nationally known wholesaler and retailer" of a line of beauty and cleaning products and "advertises extensively via trade shows, personal appearances, print advertisements, nationally-broadcast infomercials, and through the internet." Pl.'s Amend. Compl. ¶ 11. However, the evidentiary record corroborating these claims is limited to references to Plaintiff's website and images that appear to depict the sale of Plaintiff's jewelry-cleaning products and services, under the Everlina Laurice name, in a booth at an unidentified date and shopping mall setting. See Pl.'s Resp. Mot. Dismiss, Exs. C-E, Nov. 15, 2012.

Under the circumstances, the relative weakness of
Plaintiff's trademarks weighs against finding a likelihood that
consumers will confuse Defendants' mark with Plaintiff's.

> iii. Price and other factors indicating care and
> attention of consumers in purchasing the parties'
> products (Lapp Factor 3)

The third factor to consider in determining whether
consumer confusion is likely is the expected care and attention
of consumers when purchasing a product with Plaintiff's mark.
See Checkpoint Systems, 269 F.3d at 284. This factor involves
consideration of the price of the products at issue, the
sophistication of the segment of the market purchasing the
products at issue, and/or other evidence suggesting a heightened
level of scrutiny by a purchaser. See, e.g., R.H. Ants, 771 F.
Supp. 2d at 494 ("The amount of care and attention given to a
purchasing decision increases proportionately as the costs of
the goods or services increase").

In the instant case the parties have made no specific
representations about the sophistication of their clientele,
apart from the generally uncontested facts that the perfume
products bearing Defendants' mark are sold at retail boutiques
and "luxury department stores such as Saks Fifth Avenue," see
Decl. of Laurice El Badry Rahme ¶ 8, ECF No. 84, whereas
Plaintiff's products bearing the "Everlina Laurice" and

27

"Laurice" are sold at regional venues including "flea markets" and through her website. See Hr'g Tr., 10:23-24, Dec. 3, 2012. Additionally, though the parties have failed to specifically point to the price of their various products, the uncontested factual record indicates that Plaintiff's products range in price from approximately $13 - $70 per item,[12] while Defendants' perfume and related products have suggested retail prices of $75 - $230.[13] The undisputed record includes facts—the high price and luxury sales setting of Defendants' products—which usually suggest a high level of care and attention by purchasers of these goods. Plaintiff has provided no rebuttal evidence suggesting that consumers do not use a high level of care and attention in purchasing Defendants' goods. Accordingly, this factor weighs against finding a likelihood of confusion.

> iv.  Length of time Defendants have used "Laurice & Co." without evidence of actual confusion by consumers (Lapp Factor 4)

The fourth factor to be considered in determining whether consumer confusion is likely is the length of time during which the defendant has used the allegedly offending mark without evidence of actual confusion arising therefrom. When parties with allegedly similar marks have coexisted over many years with

---

[12] See Decl. of Marie Skioryak, Ex. 3, sales invoice of Pl.'s perfume ECF No. 72-1; Decl. of Elizabeth Elfeld, Ex. 2, sales invoice of Pl.'s jewelry-conditioner, perfume, and skincare products ECF No. 72-2.
[13] See Defs.' Mot. Dismiss, Ex. A, sales invoice of Defs.' various products, ECF No. 69-2.

no evidence of actual confusion, there is a strong inference
that the marks or names at issue are not likely to cause
consumer confusion. See Versa Prods., 50 F.3d at 204-05 ("If a
defendant's product has been sold for an appreciable period of
time without evidence of actual confusion, one can infer that
continued marketing will not lead to consumer confusion in the
future. The longer the challenged product has been in use, the
stronger this inference will be."); see also Fisons, 30 F.3d at
476.

It is uncontested that Defendant Rahme Ltd. has used the
mark "Laurice & Co." since at least 1995, when a Certificate of
Assumed Name was filed in New York State, see Decl. of Laurice
El Badry Rahme, Ex. C, ECF No. 84-1, while Plaintiff has used
the marks "Everlina Laurice" and "Laurice" since at least 1994.
See Pl.'s Amend. Compl., Exs. A, Registration of Pl.'s "Everlina
Laurice" trademark; id., Ex. D, Registration of Pl.'s "Laurice"
trademark. The record shows that the parties have simultaneously
used their respective marks for seventeen years without
incidents of actual consumer confusion. Accordingly, this factor
weighs against finding a likelihood of consumer confusion.

> v. Intent of Defendants in adopting the "Laurice & Co."
> mark (Lapp Factor 5)

The fifth factor to consider in determining likelihood of
consumer confusion is whether the defendant has intended to

confuse consumers by using a mark purposefully manipulated to resemble the plaintiff's mark. A & H Sportswear, 237 F.3d at 226 (citing Versa Prods., 50 F.3d at 205-06). Additionally, "some degree of bad faith is also relevant to the selection of an appropriate remedy," as the "intent to copy, without more, is not sufficiently probative of the defendant's success in causing confusion to weight such a finding in the plaintiff's favor." Id. at 225-26.

In the instant case Plaintiff has suggested that Defendants acted maliciously by continuing to utilize the "Laurice & Co." mark despite its alleged infringement of Plaintiff's trademarks. Amend. Compl. ¶ 21; Pl.'s Resp. to Mot. Summ. J., Ex. I5, ECF 86-2 (stating that Defendants' conduct has been "malicious," "deliberate, and willful"). However, Plaintiff has not alleged or provided any factual evidence suggesting that Defendants selected or manipulated the "Laurice & Co." mark in order to cause confusion with Plaintiff's products. To the contrary, the uncontested record suggests that the parties were unaware of one another at the time that they began using their respective marks. Moreover, Defendant Rahme, whose first name is "Laurice," appears to have begun using the contested mark in good faith, in order to have a business name that reflected her personal name. Therefore, because Plaintiff has provided no evidence that Defendants adopted the "Laurice & Co." mark with the intention

to cause confusion between the parties' products, this factor weighs against finding a likelihood of confusion.

> vi.   Evidence of actual confusion by consumers (Lapp Factor 6)

The sixth factor to be considered in determining likelihood of confusion between Defendants' and Plaintiff's marks is whether evidence exists of actual confusion between the parties' marks. The Third Circuit has clarified that some evidence of customer confusion between the parties' products is not dispositive of the question of actual confusion, particularly if that confusion is "isolated and idiosyncratic." A & H Sportswear, 237 F.3d at 227. "'[O]wnership of a trademark does not guarantee total absence of confusion on the marketplace,"' particularly where the mark involves a "common surname." Id. (quoting Scott Paper, 589 F.2d at 1231). The Third Circuit has directed district courts to use their discretion to weigh the individual facts of a case and determine whether a pattern of confusion has occurred. Id.; see also Scott Paper, 589 F.2d at 1231 (describing the inquiry as a search for a "pattern of confusion in the marketplace.").

In the instant case Plaintiff has presented two allegations of actual confusion, though the evidentiary record to support either is sparse.

31

First, Plaintiff asserts, but provides no evidence, that she has received mail at her address that was meant for Defendants. See Hr'g Tr., 15:11-12, Dec. 3, 2012. This evidence could suggest that individual customers may have mistaken Plaintiff for Defendants and thus inadvertently sent mail to Plaintiff. However, even viewed in the light most favorable to Plaintiff, this evidence is insufficient to prove a pattern of confusion between Plaintiff's and Defendants' trademarks. In Scott Paper, the Third Circuit upheld a finding of no actual confusion where a plaintiff pointed to misdirected letters and phone calls as evidence of actual confusion of the parties' marks. 589 F.3d at 1231. In that case, which involved two marks based on a common surname, the Circuit Court noted that some risk of uncertainty was inevitable and that evidence of misdirected mail alone was insufficient to prove actual confusion. Id. Even if Plaintiff provided actual evidence that she received misdirected mail intended for the Defendants due to public confusion between the parties' marks, this evidence would be insufficient, on the scale alleged, to prove a pattern of actual confusion.

Second, Plaintiff contends that Defendants own the domain name "www.lauriceco.com" and that, by refusing to release that address, Defendants cause Plaintiff's customers to become confused and diverted away from Plaintiff's own website. Pl.'s

Resp. Mot. Summ. J. 4; Hr'g Tr., 19:1-3, May 18, 2012.  However, Plaintiff presents no evidence that Defendants actually use the "www.lauriceco.com" website or that the existence of the domain name has, even anecdotally, affected traffic on Plaintiff's website. Also, Plaintiff does not claim that the domain name is used to advertise Defendants' products.

The record in this case, even viewed in the light most favorable to Plaintiff, contains no evidence that Plaintiff's allegations of misdirected mail and diverted web traffic amount to a pattern of actual consumer confusion regarding the "Laurice & Co." mark. Therefore, this factor weighs against a finding a likelihood of confusion between the parties' marks.

### vii. Channels of trade and advertising media used by Plaintiff and Defendants (Lapp Factor 7)

The seventh factor to consider in determining likelihood of consumer confusion is whether the goods bearing the marks at issue are marketed through the same channels of trade and advertised through the same media. "[T]he greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion." Checkpoint Systems, 269 F.3d at 288, 289 (citations omitted). In evaluating this factor, courts should consider the "media the parties use in marketing their products as well as the manner in which the parties use their sales forces to sell their products to consumers." Id. at 289.

33

Neither party in the instant case has provided evidence of the channels and scope of advertising and sales strategies used to market their respective products. It is uncontested that the parties each maintain a website for online sales. See Pl.'s Resp. Mot. Summ. J. 4; Decl. of Laurice El Badry Rahme ¶ 8, ECF No. 84. Additionally, it is uncontested that Defendants' products are sold at Saks Fifth Avenue and individual boutique locations, while Plaintiff's products are sold through retail locations including flea markets.[14] Therefore, the evidence presented in this case does not indicate a strong similarity between the advertising and marketing campaigns of the two parties—or any similarity at all apart from the very general fact that both parties make online sales through their respective websites. For this reason, this dissimilarity in marketing and advertising weighs against a finding of likelihood of confusion between the parties' marks.

>    viii.    Plaintiff's and Defendants' Target Consumers
>         (Lapp Factor 8)

The eighth factor to be considered in determining likelihood of consumer confusion is whether the "parties target their sales efforts to the same consumers." Checkpoint Systems,

---

[14] As noted above, Plaintiff asserts that she is a "nationally known wholesaler and retailer," and "advertises extensively via trade shows, personal appearances, print advertisements, nationally-broadcast infomercials, and through the internet." Pl.'s Amend. Compl. ¶ 11. However, evidence of Plaintiff's physical retails sales is limited to images depicting Plaintiff selling jewelry-cleaning products at a booth in a mall or flea market setting. See Pl.'s Resp. Mot. Dismiss, Ex. C-E, Nov. 15, 2012.

269 F.3d at 289 ("[W]hen parties target their sales efforts to the same consumers, there is a stronger likelihood of confusion."). The parties have not made specific evidentiary representations of their respective consumer targets. However, it appears uncontested that the parties generally cater to different groups of consumers, as indicated by the fact that Defendants' products are sold in upscale retail locations and Plaintiff's in comparatively down-market locations. Because Plaintiff has provided no evidence that the parties are targeting the same consumer population, and because the uncontested factual record suggest that the parties actually have dramatically different customer bases, this factor weighs against a finding of likelihood of confusion.

>   ix.  Relationship of Plaintiff's and Defendants'
>        products in the minds of consumers (Lapp Factor 9)

The ninth factor to consider in determining whether consumer confusion is likely is the relationship of the parties' goods in the minds of consumers. In determining the nature of this relationship, "courts examine whether buyers and users of each parties' goods are likely to encounter the goods of the other, creating an assumption of common source affiliation or sponsorship." Checkpoint Systems, 269 F.3d at 286 (citing Fisons, 30 F.3d at 481). "The question is whether the consumer might . . . reasonably conclude that one company would offer

both of these related products." <u>Fisons</u>, 30 F.3d at 481. Put another way, this analysis requires a court to consider "whether the goods are similar enough that a consumer would assume they were offered by the same source." <u>Checkpoint Systems</u>, 269 F.3d at 286 (citing <u>Wynn Oil Co. v. Thomas</u>, 839 F.2d 1183, 1187 (6th Cir. 1988)).

Central to this dispute is the fact that both the Plaintiff and Defendants produce and sell perfumes with the word "Laurice" appearing on them. Making all inferences in the Plaintiff's favor, the Court recognizes that perfume buyers—either retailers or individual consumers—may come across both parties' products. Case law in this area suggests that where a plaintiff's product and an allegedly infringing product perform the same or related functions, there is potential for consumers to mistakenly believe that both products come from a common source. <u>See, e.g.</u>, <u>Fisons</u>, 30 F.3d at 581 (finding that plaintiff's peat moss and defendant's fertilizer were used for the same common purpose of improving soil, and thus that a consumer might reasonably believe that both were offered by the same company).  Therefore, because Plaintiff has provided evidence of possible association between the parties' products in the minds of consumers,[15] this

---

[15] However, in light of the larger body of uncontested facts previously discussed—the drastically different prices, packaging designs, and sales venues of these products—the Court does not find that the parties' products are so similar that such an association would be likely.

factor weighs in favor of a finding of likelihood of confusion between the parties' marks.

x. Evidence of converging markets (Lapp Factor 10)

The tenth factor that a court may consider in evaluating likelihood of confusion between the parties' marks is whether there is evidence to suggest that the markets of a trademark owner and alleged infringer overlap or are likely to converge. See Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 724 (3d Cir. 2004). This factor is considered to be highly context-specific. Id.

In the instant case, the parties appear to concede that they target different segments of the marketplace, as the undisputed facts demonstrate that their products are sold in different venues and for different prices. Additionally, the parties have not asserted that their markets are likely to converge in the future. Because Plaintiff has provided no evidence that that the parties' markets currently overlap, or are likely to overlap in the future, this factor, to the extent that it is even relevant, further weighs against a finding of likelihood of confusion.

b. Balancing the Ten Lapp Factors

In the present case it is evident and uncontested that the parties sell the same type of product (perfume), utilize a mark

37

containing a common word ("Laurice"), and make some of their

sales through an online presence. However, beyond these few

general similarities, the record indicates that products bearing

the parties' respective marks are highly distinguishable in

appearance, price, sales venue, and not least of all, because

the "Laurice & Co." mark is used inconspicuously, as a means of

product tracking, rather than prominently, to attract buyers. In

fact, only Lapp Factor 9, relationship of Plaintiff's and

Defendants' products in the minds of consumers, weighs in favor

of Plaintiff's petition; all other factors weigh against her.

After balancing the ten Lapp factors and considering the

totality of the circumstances, no reasonable jury could find any

likelihood of confusion between the parties' marks. Therefore,

because Plaintiff has failed to produce evidence that a dispute

of material facts exists as to whether she would prevail on this

necessary element to her trademark infringement and unfair

competition claims, summary judgment in Defendants' favor as to

Plaintiff's Counts 1-2 and 4 is warranted.

    2. Counterfeiting Plaintiff's trademarks (Count 3)

    Plaintiff has also asserted that Defendants' use of the

"Laurice & Co." mark on their Bond No. 9 products constitutes

counterfeiting of Plaintiff's trademarks. See Amend. Compl. ¶¶

34-36. The Court construes this allegation, Count 3 of

Plaintiff's amended complaint, as a claim of unlawful counterfeiting of a registered trademark in violation of the Lanham Act. See 15 U.S.C. §§ 1116 (d), 1127. "To establish federal trademark counterfeiting, the record must show that (1) the defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing it was counterfeit or was[sic] willfully blind to such use." Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 580-81 (E.D. Pa. 2002) (citing Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc., 1998 WL 767440, *7 (E.D. Pa., Nov. 3, 1998)); see also Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536 (D.N.J. 2008). In the instant case, because Plaintiff cannot establish that Defendants' use of "Laurice & Co." prima facie infringes on Plaintiff's marks in violation of Lanham Act § 1141, Plaintiff will also be unable to establish the first element required in her counterfeit claim. Under these circumstances, Defendants are entitled to summary judgment as to Count 3 of Plaintiff's amended complaint.[16]

---

[16] Because the Court finds that Plaintiff cannot meet the prima facie requirement of proof of infringement required for a counterfeiting claim, the Court need not reach address whether evidence exists on the record that Defendants intended or were willfully blind to possible infringement.[16] However, even if Plaintiff could show an underlying infringement violation, the Court notes that no evidence has been produced that would allow a reasonable jury to find that Defendants intended to cause infringement, as required by the second element of the counterfeiting violation.

3. Dilution of Plaintiff's trademarks (Count 5)

In addition to her trademark infringement and counterfeiting claims, Plaintiff alleges that Defendants' use of the "Laurice & Co." mark "impairs" the "distinctiveness" of Plaintiff's "Everlina Laurice" and "Laurice" trademarks in violation of the Federal Trademark Dilution Act, 15 U.S.C. §§ 1125(c), 1127. Amend. Compl. ¶¶ 43-44.[17] This cause of action "grants extra protection to strong, well-recognized marks even in the absence of a likelihood of consumer confusion." Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 163 (3d Cir. 2000).

The elements of a violation of the federal dilution statute are (1) that the plaintiff is the owner of a mark qualifying as "famous" under the factors listed in § 1125 (c)(1); (2) that the defendant is making commercial use in interstate commerce of a

---

[17] Plaintiff refers to the Federal Trademark Dilution Act, which the Court infers to mean the Federal Trademark Dilution Act of 1996 (FTDA), on which the Third Circuit's seminal case on federal dilution claims, Times Mirror Magazines, Inc., was decided. That statute was replaced in its entirety by the Trademark Dilution Revision Act of 2006 (TDRA). Courts within the Third Circuit, including in the Eastern District of Pennsylvania, have continued to apply Times Mirror Magazines, as good law, see, e.g., R.J. Ants, 771 F. Supp. 2d at 601 n.6; Steak Umm Co., LLC v. Steak 'Em Up, Inc., 2011 WL 3679155, *8 (E.D. Pa. Aug. 23, 2011); CPC Properties, Inc. v. Dominic, Inc., 2013 WL 4457338, *5 (E.D. Pa. Aug. 21, 2013), though a recent Eastern District opinion notes that the Third Circuit has not fully addressed new developments under the new law, such as "the establishment of a likelihood of dilution standard . . . rather than an actual dilution standard; a provision that non-inherently distinctive marks may qualify for protection; and a reconfiguration of the factors used to determine whether a mark is famous for dilution purposes, including a rejection of dilution claims based on 'niche' fame." CPC Properties, Inc., 2013 WL 4457338, *5 n.1 (quoting Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 306 n.87 (S.D.N.Y. 2007)).

mark or trade name; (3) that the defendant's use began after the plaintiff's use became famous; and (4) that defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services. See CPC Properties, Inc., 2013 WL 4457338, *5 (citing Times Mirror Magazine, Inc., 212 F.3d at 162).

A mark may be considered "famous," for purposes of the federal dilution statute, where "[the mark] is widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the mark's owner." Xtreme Caged Combat v. ECC Fitness, 2012 WL 5893970, *6 (E.D. Pa., Nov. 21, 2012) (citing 15 U.S.C. §1125(c)(2)(A)). Notably, federal courts have interpreted the inclusion of this language in the revised form of the federal dilution statute to indicate "a reject[ion] [of] dilution claims based on niche fame, i.e. fame limited to a particular channel of trade, segment of industry or service, or geographic region." Dan-Foam A/S, 500 F. Supp. 2d at 306 n.87 (citations omitted); see also CPC Properties, Inc., 2013 WL 4457338, *5 n.1 (noting that the revised TDRA included a "rejection of dilution claims based on 'niche' fame").

The Trademark Dilution Revision Act points to four nonexclusive factors for a court to consider in determining

41

whether a mark may be deemed famous. See 15 U.S.C. § 1125
(c)(2)(A). These factors include:

(i)     The duration, extent, and geographic reach of
        advertising and publicity of the mark, whether
        advertised or publicized by the owner or third
        parties;

(ii)    The amount, volume, and geographic extent of sales
        of goods or services offered under the mark;

(iii)   The extent of actual recognition of the mark; [and]

(iv)    Whether the mark is registered under the Act of
        March 3, 1881, or the Act of February 20, 1905, or
        on the principal register.

Id. While Plaintiff has alleged that she is a "nationally known
wholesaler and retailer" of perfumes and related products, she
has presented no evidence on the record to demonstrate national
distribution, let alone national recognition, including no
evidence of the extent or geographic reach of advertising or
sales, or actual consumer recognition of Plaintiff's mark. Pl.'s
Amend. Compl. ¶ 11. Therefore, the Court finds that Plaintiff
has failed to produce sufficient evidence from which a
reasonable jury could find Plaintiff's marks "famous" or that
Defendants' mark caused dilution within the meaning of § 1125
(c). As such, the Court will grant summary judgment in

Defendants' favor as to Count 5 of Plaintiff's amended complaint.

### 4. Intentional Interference with Plaintiff's Actual and Prospective Business Relations (Count 6)

Plaintiff's Sixth Count asserts that Defendants have purposefully interfered with Plaintiff's existing and prospective business relations, causing a substantial loss of existing business and diversion of a substantial portion of prospective business. Amend. Compl. ¶¶ 47-48. The Court understands this allegation to refer to the Defendants' use of the "Laurice & Co." mark and ownership of the www.lauriceco.com domain name.

This claim is governed by Pennsylvania state law, where the tort of intentional interference with business relations is defined by four elements:

> (1) the existence of a contractual,[18] or prospective contractual, relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the

---

[18] In adopting this standard, Pennsylvania courts have drawn on a similar standard for intentional interference with contractual relations. See Sylk v. Bernsten, 2003 WL 1848565, *7 (Pa. Ct. C.P., Feb. 4, 2003).

defendant; and (4) the occasioning of actual legal damage

as a result of the defendant's conduct.

Pawlowski v. Smorto, 403 Pa. Super. 71, 78 (Pa. Super. Ct.

1991); see also Al Hamilton Contracting Co. v. Cowder, 434 Pa.

Super 491, 497 (Pa. Super. Ct. 1994).

While Pennsylvania state courts have applied the

contractual relation standard to business relation causes of

action, it does not appear necessary that a complaint for

intentional interference with business relations actually

alleges the existence of an existing or prospective contract.

However, Pennsylvania law requires that, when alleging "the tort

of international interference with business," that "a business

relationship be proved with some degree of specificity, at least

to the point that future profit be a realistic expectation and

not merely wishful thinking." Frisby v. Frankford Hosp., 2006 WL

1769618, *5 (Pa. Ct. C.P., May 23, 2006) (citing Feingold v.

Hill, et al., 44 Pa. D. & C. 3d 610, 618 (Pa. Ct. C.P., 1986));

see also Behrand v. Bell Tel. Co., 242 Pa. Super. 47, 62 (Pa.

Super. Ct. 1976).

Plaintiff's allegations that Defendants' use of the

"Laurice & Co." mark and their ownership of the

"www.lauriceco.com" domain name have usurped consumer good will

and diverted business away from Plaintiff, even if proven, would

not support relief under this cause of action, which requires

44

evidence of specific relationships between a plaintiff and a third party. Plaintiff has provided no evidence of specific relationships that she maintains or has a realistic expectation of maintaining in the future that would allow a reasonable jury to find in her favor the necessary elements of intentional interference with business relationships.[19] Accordingly, as to Count 6, Defendants are entitled to summary judgment.

### 5. Civil Conspiracy (Count 7)

In the final count of her amended complaint, Plaintiff alleges that Defendants engaged in a civil conspiracy for the "illegal and improper purpose" "to injure and destroy [Plaintiff's business] and convert and usurp [Plaintiff's business] [for] themselves." Amend. Compl. ¶ 50. In Pennsylvania, a claim of civil conspiracy requires "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Pennsylvania

---

[19] Plaintiff's submissions illustrate that at least as early as August 6, 2003, the date that Defendant Rahme's petition to trademark "Laurice" was denied due to likelihood of confusion with Plaintiff's mark "Everlina Laurice," Defendants have known of Plaintiff's marks and have continued to use "Laurice & Co." as a trade or business name on the packaging of Bond No. 9 products. See Pl.'s Resp. Mot. Summ. J., Ex. I10, U.S. Patent and Trademark Office Action. However, Defendants' uncontested awareness of Plaintiff's trademarks hardly proves that the Defendants intended to interfere with Plaintiff's business. Moreover, Plaintiff has not provided specific claims or evidence of business relations, existing or prospective, that were affected by Defendants' action.

45

v. TAP Pharmaceutical Products, Inc., 36 A.3d 1112, 1114 (Pa.
Commw. Ct. 2011) (citations omitted). Additionally, "proof of
malice, or an intent to injure, is . . . an essential part of a
cause of action for conspiracy." Id.

Plaintiff has made unsubstantiated claims that Defendants
have maliciously conspired to harm Plaintiff's business by
continuing to use an allegedly infringing trademark. But,
Plaintiff points to no factual details or evidence of the
specific elements of civil conspiracy, such as the existence of
a common purpose between these parties or a particular intent to
injure the Plaintiff. Therefore the Court finds that, because no
reasonable jury could find in Plaintiff's favor under this
evidentiary record, Plaintiff's claim of civil conspiracy fails
and Defendants are entitled to summary judgment.

B. Plaintiff's Cross Motion for Summary Judgment

In addition to her response in opposition to Defendants'
motion for summary judgment, Plaintiff has also submitted a
document, labeled "Motion to Dismiss Counterclaim" (ECF No. 83).
As noted above, the Court follows a policy of liberally
construing the submissions of a pro se plaintiff who may not be
well versed in the law. In this case, Plaintiff appears to
assert that the evidence on the record is not in dispute and
that a reasonable jury would have to find in her favor; the

Court therefore construes Plaintiff's "Counterclaim" as a motion asserting that no disputes of material fact exist and that Plaintiff is entitled to summary judgment as a matter of law.[20]

When confronted with cross motions for summary judgment from both sides, the Court must consider each motion separately. See Benckini, 654 F. Supp. 2d at 315. Further, the same standard and burdens apply on cross motions for summary judgment, as such cross motions are "no more than a claim by each side that it alone is entitled to summary judgment." See id. (quoting Transportes Ferreos de Venezuela II CA v. NKK Corp., 238 F.3d 555, 560 (3d Cir. 2001)).

While the Court must review the summary judgment motions of each party independently, in this case both motions turn on the same issue: whether Plaintiff has asserted sufficient specific facts, supported by evidence on the record, that a reasonable jury could find in her favor. Plaintiff was required to make such a showing to survive Defendants' motion for summary judgment; likewise, Plaintiff would need to make this showing,

---

[20] In Plaintiff's Counterclaim, she asserts that "a reasonable jury could return a verdict in "Plaintiff"[sic] favor," that "concrete" evidence favors a jury verdict for Plaintiff, and that Plaintiff "is entitled to a verdict" from reasonable jurors based on the evidence. See Pl.'s Counterclaim 1, 2. This language suggests that Plaintiff believes that the record clearly supports a verdict in her favor, in other words, that she, rather than Defendants, is entitled to summary judgment. While the language in Plaintiff's submission does not accord perfectly with the legal standard for a motion for summary judgment, the Court understands Plaintiff to be seeking for such a judgment in her favor.

as a threshold matter, to prevail in her own motion for summary judgment.[21]

Plaintiff's Counterclaim reiterates her prior conclusory statements: that Defendants' actions(the ownership of the "LauriceCo" domain name and the marketing of perfumes with the "Laurice & Co." mark) infringe upon Plaintiff's own marks; that Plaintiff's marks are strong, as evidenced by their registration with the U.S. Patent and Trademark Office; that consumer confusion between Defendants' and Plaintiff's marks is likely; and that Defendants' actions represent and intentional and malicious attempt to harm Plaintiff's business. But, Plaintiff again fails to point to specific uncontested facts on the record from which a reasonable jury <u>could</u> find in her favor, much less establish that an undisputed factual record exists under which a reasonable jury would have to find in her favor. Therefore, the Court finds that summary judgment in Plaintiff's favor is not warranted.

## IV.   CONCLUSION

For the reasons stated above, summary judgment in favor of Defendants and against Plaintiff is warranted as to all counts in Plaintiff's amended complaint. Summary judgment in

---

[21] To prevail in her motion for summary judgment, Plaintiff would need to go further, demonstrating that no disputes of material fact exist and that the uncontested facts support a finding in her favor as to each element of her various claims. However, because Plaintiff fails to even point to specific facts to support a prima facie case as to each count in her complaint, the Court need not go further.

Defendants' favor is also warranted as to Plaintiff's cross

motion for summary judgment.

    An appropriate order follows.